### Shapiro, Appellant, *v.* Martin.

Argued September 28, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Maurice A. Granatoor,* and with him *Abraham J. Levinson,* for appellant.

*Allen C. Thomas, Jr.,* for appellee.

OPINION BY STADTFELD, J., December 16, 1933:

This is an appeal by plaintiff from the order of the court below refusing a new trial in an action of assumpsit, tried by the court without a jury, and in which judgment was entered for defendant on the findings.

Plaintiff, Dora Shapiro, brought suit against Francis E. Martin to recover the sum of $570, with interest from December 24, 1931, being the amount of a certain check made by the defendant, drawn on the Frankford Trust Company, Philadelphia, to the order

of Aron Silber and Dora Silber and of which plaintiff was the endorsee. The check contained the following notation endorsed thereon: "Proceeds of sale in full in accordance with bill of sale, for all stock and fixtures of Del. & Gro. Bus. at 2432 N. 20th Street, city of Philadelphia."

The statement of claim avers that the check was on December 24, 1931, in due course, negotiated by the payees to plaintiff for a good and valuable consideration without notice of any infirmity; that the check was on the same day deposited to her account in the Tradesmens National Bank and Trust Company and subsequently, in the general course of business, presented to the Frankford Trust Company for payment; that the Frankford Trust Company refused to honor the check and thereafter returned it to the Tradesmens National Bank and Trust Company, marked "Payment stopped," whereupon it was returned to plaintiff.

An affidavit of defense was filed averring that the check was delivered to the payees under the following circumstances—Aron Silber and Dora Silber employed the defendant, Francis E. Martin, under an oral agency agreement to sell the grocery and delicatessen store belonging to Aron Silber and Dora Silber situate at No. 2432 North 20th Street, Philadelphia; that defendant as agent for said Aron Silber and Dora Silber did sell the said business to one Bertha Glickman and received two checks of Nathan Glickman in the amount of $800 as the purchase price; that the said Bertha Glickman entered into possession of said business, but alleging that false and fraudulent representations had been made to her by Aron Silber and Dora Silber regarding said business and inducing the sale and purchase thereof, caused payment to be stopped on the checks given to defendant for the account of Bertha Glickman as purchaser; that the said Aron Silber and Dora Silber were promptly notified that

payment of said checks had been stopped and that payment of the check in suit would be stopped. Defendant further averred that the plaintiff, Dora Shapiro, is a near relative of Aron Silber and Dora Silber and that she was fully informed of all the circumstances of the case and that she did not give a good and valuable consideration for said check and that she did not receive the same in good faith and without notice of any infirmity therein, and did not become the holder in due course; that the endorsements and transfer of the check to Dora Shapiro was for the sole purpose of attempting to impose liability upon defendant where he was acting as agent merely, and with the intent of making him liable under circumstances where no legal liability arose as to him; that the check was deposited after Aron Silber and Dora Silber and said plaintiff had knowledge of the action taken by Bertha Glickman and after they had notice of the infirmity in the check in question.

The case was tried before CRANE, J., without a jury. The testimony of plaintiff whose husband is a brother of Dora Silber was to the effect that the check was given to her by Aron Silber on the morning of December 24, about 10 or 11 o'clock in payment of an antecedent debt. On cross-examination she testified that when payment of the check was stopped she telephoned to Aron Silber and Dora Silber and told them that the check came back and she returned the check to them in about a week.

The trial judge made his findings and filed an opinion from which we quote in part as follows: "When plaintiff, after depositing the check received same back into her possession, marked 'payment stopped,' she telephone her brother-in-law, the payee, and told him 'the check came back unpaid.' The payee upon receiving this advice, personally called at her home, and was handed back the check by plaintiff.

"The court, sitting as a jury, analyzed the transac-

tion involved in the instant case and cannot avoid stigmatizing it as a nefarious attempt to clothe the plaintiff with the status of an innocent holder for value in order to collect the amount of said check from the defendant, who is under no more·moral obligation to pay same than the writer of this opinion.

"When plaintiff returned the check, after payment thereon had been stopped, it is evident she did not regard the check as payment of the moneys she may have previously loaned her brother-in-law. While she had the check in her possession at the trial of this case, the payee in handing back the check to her, at or before trial, constitutes his sister-in-law a use plaintiff, which was not the form in which the action was brought. The payee should not be permitted to use his near relative as a vehicle through which to collect the purchase price of his business from the defendant broker who negotiated the sale."

These findings are as conclusive upon us as the verdict of a jury if there be legally competent evidence to sustain them. An examination of the testimony leads us to the conclusion that they were fully warranted, and judgment was properly entered for defendant.

The assignment of error is overruled and judgment affirmed.